# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:09-cr-82 JVB |
| | ) | |
| RANDALL RAY FLETCHER, JR. | ) | |

**OPINION AND ORDER**

On April 27, 2009, Defendant Randall R. Fletcher Jr. was charged via complaint with producing, receiving, and possessing child pornography from February 28 through July 4, 2002. He was arrested on May 1, 2009. An indictment was filed on May 22, 2009, charging him with the same three offenses. This matter is before the Court on Defendant Fletcher Jr.'s motion to suppress physical evidence and statements he made which arise from a warrantless search of his residence in July 2002. The Court held an evidentiary hearing on February 2, 2010.

**A. Background and Facts**

**(1)** *Jacqueline Dermody's Evidence*

In July 2002 Defendant was on probation from a conviction for conspiracy to commit murder, pursuant to a guilty plea and plea agreement in the LaPorte County, Indiana, Circuit Court. The plea agreement included the following language:

> A. WAIVER OF SEARCH AND SEIZURE RIGHTS:
>
> You shall waive any and all rights as to search and seizure during your period of probation, and submit to the search of your person or property by any police officer if a search is requested by a probation officer of this Court.

Hrg. Ex. 8.

On July 2, 2002, Mr. Fletcher's then wife, Angela, called his LaPorte County probation officer, Jacqueline Dermody, to report that she had found CDs depicting child pornography in a box under their bed. Dermody recorded in her notes for July 2 that she called the Starke County police (the Fletchers were living in San Pierre, Indiana, in Starke County) and left a message for Oscar Cowen, Freddy Baker, or Bob Sims. In the next entry, dated July 8, 2002, she recorded that she spoke with Cowen and learned that Fletcher had been charged with possession of pornography. She testified at the hearing that in contacting the Starke County officers, she was authorizing them to conduct a search of Defendant's home, if necessary.

**(2)** *Oscar Cowen's Evidence*

In his written report, Cowen stated that on July 2, 2002, the LaPorte County Probation Department had notified him of Fletcher's possible involvement with child pornography and that he had advised Dermody he had been unable to contact Angela Fletcher. He further reported that on July 4 he was called to the Starke County Jail to meet with Mrs. Fletcher and the county prosecutor, Kim Hall. At the meeting Mrs. Fletcher indicated that there was a box under the couple's bed containing pictures of nude young girls and that her husband spent a lot of time on computers. She signed a consent to search her residence and to seize any property they considered to be evidence. Cowen went to the residence with officers Dan Anderson and David Combs. According to Cowen's written report, they entered the home and found Defendant sleeping on a couch in the living room. Cowen told Defendant why they were there. Combs watched Defendant while Cowen and Anderson searched the bedroom.

Cowen also testified at the hearing. He said that he had received a message from

2

Dermody on July 2, 2002, to call her. He initially testified that when he spoke by phone with her, she instructed him to get in touch with Mrs. Fletcher, but that he recalled no other instructions from her. He subsequently testified on redirect examination that Dermody had asked him to investigate the matter.

According to Cowen, county prosecutor Kim Hall was present at the July 4, 2002, meeting with Mrs. Fletcher. When asked whether there was a discussion between himself and Hall about getting a search warrant, he answered "I think we were satisfied with the consent to search." Tr. P. 193.

Cowen further testified that when they knocked on the door of the Fletchers' residence on July 4, a voice called to them to come in; they entered the apartment and found Defendant lying on the couch. Cowen explained the apparent discrepancy between the written report and his trial testimony by stating that when they entered the house, Defendant appeared to have been sleeping. Cowen related what Mrs. Fletcher had told him and informed Defendant that they were going to conduct a search. According to Cowen, Defendant did not say or do anything that he interpreted as an objection to the search. When first asked, Cowen stated that he was not certain that he told Defendant that they had Mrs. Fletcher's consent to the search, but under cross-examination stated that he told him they had a consent, most likely in response to Defendant's question as to whether they had a warrant to search. Cowen and Anderson entered the bedroom and found a box under the bed containing pictures of nude young girls. They also found a computer and computer-related media in the home. Defendant told the officers that the computer and pictures belonged to someone named Ken, who had moved out about a month before.

**(3)** *Daniel Anderson's Testimony*

Daniel Anderson, who in July 2002 was a detective with the Starke County Sheriff's

Department, also testified at the hearing. He stated that when the three officers arrived at Defendant's residence on July 4, he knocked on the door and Cowen said "police officer," whereupon a voice told them to come in. He stated that Cowen told Defendant that they had a consent to search. According to Anderson, Defendant was not handcuffed while Anderson and Cowen were searching the bedroom. Defendant did not do or say anything that Anderson interpreted as an objection to the search. Anderson also testified that Defendant never asked if they had a warrant.

**(4) David Combs' Testimony**

The Government's final witness at the hearing was David Combs, who in July 2002 was a patrolman with the Starke County Sheriff's Department. He was a few steps behind Cowen and Anderson when they entered the home. He was certain there was no forcible entry and that Defendant was lying on the couch when they entered, but other than that, could not say whether the officers knocked on the door and what, if anything, Defendant said to them as they entered. He was with Defendant while the two detectives were searching. About two to three minutes into the search they told him to take Defendant into custody. During that time Defendant did not say or do anything that Anderson interpreted as an objection to the search of his home.

**(5)** *Defendant's Affidavit*

Defendant gave his version of the events of July 4, 2002, by means of an affidavit. According to him, he was at his residence in San Pierre when Starke County Police officers entered. He asked whether they had a warrant and was told they did not need one. He objected to their entering his home, whereupon he was placed in handcuffs and the officers searched the

4

residence.

**(6)** *The Searches*

On July 4, 2002, the officers seized the computer and many CDs and floppy diskettes from the Defendant's apartment, as well as a memory card from a digital camera, all of which were turned over to the Indiana State Police for examination, pursuant to a warrant. At some point a Trooper Lloyd spoke to Cowen and informed him that the computer contained child pornography. Cowen later learned that the computer remained in the custody of the Indiana State Police for the next six years without the examination having been completed. Federal law enforcement officials became involved in the case in the fall of 2008.

On July 5, 2002, Defendant was charged with misdemeanor possession of child pornography in Knox City Court, but on October 23, 2003, the charges were dismissed at the State's request.

The U. S. Attorney's office became involved in the case in 2008. It got in touch with Immigration and Customs Enforcement (ICE) agents after being contacted by the Indiana State Police. In January 2009 ICE agents received the evidence seized from Defendant's residence in 2002. They got a new search warrant to search the computer seized in 2002 and found images of child pornography. In March 2009 law enforcement investigators went to the home of Defendant's parents to ask them about some of the images that were found in 2002 and to ask them to identify a person in the images. They said they could not identify the person, but she was later identified as M.M. A warrant was obtained for a search of the parents' home, authorizing law enforcement officials to take pictures in order to compare them with the foreground and background of some of the pornographic images that were found on Defendant's

computer.

Law enforcement officials also searched Randall Fletcher's living quarters in the basement of his aunt's home pursuant to the aunt's consent. They seized a laptop computer and two internal hard drives compatible with it, one with 100 GB capacity and one with 320 GB capacity, as well as a 60 GB external hard drive.

## B. Summary of Arguments

Defendant contends that the search of Defendant's residence in 2002 violated the Fourth Amendment because his objection to the search trumps his wife's previously given written consent, and urges that all materials seized in 2002 as well as in 2009 be suppressed. He does not argue that his wife's consent was invalid.

The Government argues that the 2002 search was proper on at least three independent bases: first, that Defendant had no Fourth Amendment rights when the 2002 search occurred because he had relinquished them as a condition of his probation; second, that Mrs. Fletcher's consent to search was sufficient to justify the search; and third, that the officers reasonably and in good faith relied on Mrs. Fletcher's consent to search the home.

## C. Legal Standard

A warrantless search of a home is per se unreasonable and violates the Fourth Amendment unless an established exception to the warrant requirement applies. *United States v. Henderson*, 536 F.3d 776, 779 (7th Cir. 2008) (citations omitted). One exception to the requirement is voluntary consent given by a person with authority. *Id.* (citations omitted). Consent may be obtained from anyone with actual or apparent authority over the premises. *Id.*

6

However, under *Georgia v. Randolph*, "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." 547 U.S. 103, 120 (2006). The Government has the burden of proving the facts on which its legal theories are based by a preponderance of the evidence. *See United States v. Gillespie*, 974 F.2d 796, 800 (7th Cir. 1992).

**D. Discussion**

**(1)** *Waiver*

A plea agreement is a form of contract. *United States v. Barnett*, 415 F.3d 690, 692 (7th Cir. 2005). The Court agrees with Defendant that on the basis of the language of the plea agreement quoted above, Defendant waived his Fourth Amendment rights only with respect to a search only "if a search is requested by a probation officer of [LaPorte Circuit] Court." Hrg. Ex. 8. Accordingly, the Court must determine whether anything that transpired between LaPorte County Probation Officer Dermody and Officer Cowen in July can reasonably be construed as a request to search Defendant's apartment.

The Court concludes that Dermody neither expressly nor impliedly requested that Starke County officers search Defendant's residence. Neither her own case notes nor Officer Cowen's report contain any reference to a request for a search or even a request for an investigation. The Court does not believe that Dermody's telling Cowen about what she learned from Mrs. Fletcher and asking him to get in touch with her was an implied request for a search. Even if she did actually ask Cowen to investigate the matter, the Court does not believe that such a request is the equivalent of requesting a search of his residence. The Court finds that the Government has not

carried its burden of establishing that a LaPorte County probation officer requested a search of Defendant's residence.

**(2)** *Mrs. Fletcher's Consent*

The Court next considers whether *Randolph* compels a finding that the search was unconstitutional. This determination rests in part on whether Defendant expressly refused consent to the search. The officers arrived at Defendant's apartment with Mrs. Fletcher's written consent and informed Defendant that she had given her consent. Cowen testified that Defendant probably asked the officers if they had a warrant. Anderson testified that he did not ask about a warrant. Combs did not remember whether or not he asked if they had a warrant. All three officers stated that Defendant did not do or say anything that they interpreted as an objection to the search. Cowen testified that Defendant was arrested and handcuffed after the officers found the child pornography. Combs stated that two to three minutes after Cowen and Anderson went into the bedroom he was ordered to arrest Defendant, at which point he handcuffed him. Defendant claims in an affidavit that he asked the officers if they had a warrant and was told they did not need one, whereupon he objected to the search and was placed in handcuffs while the officers searched.

In resolving the conflicting testimony, the Court notes that Defendant did not testify at the hearing. His assertions were not subjected to cross examination. The Court did not have the opportunity to observe his demeanor while testifying. Accordingly, the Court gives Defendant's affidavit little weight. On the other hand, the Court did observe the three officers and found them credible. It is not surprising that, almost eight years after the fact, their memories are not identical. However, because Cowen and Anderson did not agree as to whether Defendant asked

about a warrant, and mindful of the fact that the Government bears the burden of proof on the issue, the Court finds that Defendant did ask the officers if they had a warrant.

However, the Court also finds that the Defendant did not expressly refuse to consent to the search. Under the circumstances, Defendant's inquiry about a search warrant does not equate to his express repudiation of his wife's consent. The Court finds that the inquiry was just that—an inquiry. When the police knocked and announced themselves, Defendant invited them in. Once the officers explained that his wife had consented to the search, Defendant gave them no reason to believe that he was overriding that consent. In fact, Defendant said nothing else to the officers and none of the three officers understood that Defendant was revoking his wife's consent or objecting to the search. Defendant accepted the officers' explanation for their presence and said no more. Moreover, the Court finds that Defendant was not handcuffed or removed from the scene until after the pornography was found; he was not intimidated or physically prevented from objecting to the search.

The Court finds no support in the case law for the proposition that Defendant's inquiry about a search warrant is tantamount to an express refusal of consent. *C.f. Randolph*, 547 U.S. at 107 ( where the police asked defendant for permission to search the house, "which he unequivocally refused.") *See also United States v. Sims*, 435 F. Supp. 2d 542, 545–46 (S.D. Miss. 2006) (defendant's attempt to slam the door shut as police were entering an express refusal of consent); *United States v. Henderson*, 2006 WL 3469358, *2 (N.D. Ill. 2006) (the statement "Get the f* * * out of my house" a direction that the police refrain from searching the residence); *United States v. Foster*, 654 F. Supp. 2d 389, 397 (E.D.N.C. 2009) (defendant's ambiguous statement to officers that he was going to make them earn their pay not an express refusal of consent). Therefore, the Court concludes that *Randolph* is distinguishable and the search was

9

constitutional on the basis of Mrs. Fletcher's consent.  Accordingly, the Court need not address the Government's good faith argument.

### C.  Conclusion

For the foregoing reasons, the Court DENIES Defendant's motion to suppress evidence (DE 33).

SO ORDERED on March 9, 2010.

                                               s/ Joseph S. Van Bokkelen
                                               Joseph S. Van Bokkelen
                                               United States District Judge